**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

JOHNNY WASHINGTON, a/k/a
JOHNNIE P. WASHINGTON,

                Plaintiff,
v.                                        No. 11-CV-1137
                                                        (TJM/CFH)
T. FAROOKI, Dentist, Clinton Correctional
Facility; R. OLIVEIRA, Dentist, Clinton
Correctional Facility; DORIS, Clerk/Call-Out,
Clinton Correctional Facility,

                Defendants.[1]

---

**APPEARANCES:**                             **OF COUNSEL:**

JOHNNY WASHINGTON
Plaintiff Pro Se
04-A-1029
Elmira Correctional Facility
P.O. Box 500

---

[1] By letter dated October 19, 2011, non-party Superintendent Thomas L. LaValley informed the Court that the Clinton Correctional Facility ("Clinton") was unable to locate an individual by the name "Doris" at Clinton's Dental Office. Dkt. No. 8 at 1. By letter dated November 5, 2011, Washington indicated that "Doris" could also be an individual named "Delores" or "Dora." Dkt. No. 12 at 2. On November 9, 2011, the Court reissued a summons to "Doris." Dkt. No. 13. By letter dated December 9, 2011, DOCCS's Deputy Counsel William M. Gonzalez informed the Court that DOCCS does not have sufficient information to identify a DOCCS employee named "Doris," "Delores," or "Dora" who worked with defendant Oliveira at Clinton's Dental Office. See Dkt. Nos. 16 at 1, 17 at 1.

    Where a defendant has not been served with process within 120 days of the filing of the complaint, the complaint must be dismissed without prejudice as to that defendant or the court must order "service be made within a specified time." FED. R. CIV. P. 4(m). If, however, the plaintiff demonstrates good cause for service failures, the Court must also extend the time to serve. Id. Additionally, the Second Circuit has held that "district courts have discretion to grant extensions even in the absence of good cause." Zapata v. City of New York, 502 F.3d 192, 196 (2d Cir. 2007). Here, more than 120 days have passed since Washington filed his complaint on September 26, 2011. Service of process has not been effected on "Doris," "Delores," or "Dora." Washington has not provided any reasons constituting good cause for failing to serve this named defendant. Accordingly, any and all claims alleged against said defendant should be dismissed from this action.

Elmira, NY 14902

| | |
|---|---|
| HON. ERIC T. SCHNEIDERMAN<br>Attorney General for the<br>  State of New York<br>Attorney for Defendants<br>The Capitol<br>Albany, New York 12224-0341 | DAVID L. COCHRAN, ESQ.<br>Assistant Attorney General |

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER[2]

Plaintiff pro se Johnny Washington, also known as Johnnie P. Washington ("Washington"), an inmate currently in the custody of the New York State Department of Correctional and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, two DOCCS dentists, violated his constitutional rights under the Eighth Amendment. Compl. (Dkt. No. 1). Presently pending is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. Dkt. No. 51. Washington opposes this motion. Dkt. No. 56. For the following reasons, it is recommended that defendants' motion be denied.

### I. Background

The facts are related herein in the light most favorable to Washington as the non-moving party. See subsection II(A) infra. At all relevant times, Washington was an inmate at Clinton Correctional Facility ("Clinton").

---

[2] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

2

On February 10, 2011, Washington went on a dental call-out. Compl. at 4. Defendant Dr. Oliveira, a dentist, attested that defendant Dr. Farooki, also a dentist, had diagnosed Washington with a Periapical Abscess[3] on tooth number twenty-six. Oliveira Decl. (Dkt. No. 51-3) ¶ 4; Dkt. No. 56 at 25. Farooki placed Washington on antibiotics, pain medication, and the root canal waiting list. Oliveira Decl. ¶ 4. Farooki gave Washington a ten-day prescription for Penicillin and Motrin and scheduled Washington for an appointment on February 24, 2011. Compl. at 4; Washington Resp. (Dkt. No. 56) at 2–3, 25. Washington was never called to attend the February 24, 2011 appointment, and at the same time, he had a tooth infection. Compl. at 4.

By letters dated February 24, 2011 and February 28, 2011, Washington advised Farooki that he was in serious pain, required dental treatment, and had a tooth infection. Dkt. Nos. 1 at 20, 56 at 15. These letters were left unanswered. Compl. at 4. Farooki does not present any evidence disputing Washington's claims.

On March 28, 2011, Washington was in excruciating pain and asked non-party Stickle, a program officer, to place him on emergency dental call-out in order to receive medical care. Compl. at 4; Washington Resp. at 3. Stickle granted Washington's request. Washington Resp. at 3. Oliveira took an X-ray of Washington and advised Washington that the tooth infection prevented Oliveira from performing a root canal procedure. Id. Oliveira continued Washington on the root canal waiting list and scheduled a dental appointment two weeks from that time. Id. However, Washington was never called to attend that

---

[3] Periapical refers to something that is "situated at or surrounding the apex of a tooth." DORLAND'S ILLUSTRATED MED. DICTIONARY 1257 (28th ed. 1994) [hereinafter "DORLAND'S"]. Abscess is "a localized collection of pus buried in tissues, organs, or confined spaces." Id. at 5.

3

appointment.  Id.; Compl. at 4.  According to Oliveira, he started Washington's root canal procedure on March 28, 2011.  Oliveira Decl. ¶ 5.

On March 31, 2011, Oliveira performed a root canal on Washington, prescribed Washington Ibuprofen and Amoxicillin/Clavulanate, and informed Washington that he was scheduled to return two weeks from that day.  Compl. at 4.  Washington never received the dental call-out.  Compl. at 4.  Oliveira attested that during emergency dental sick-call on March 31, 2011, Washington presented an acute Periapical Abscess with swelling and placed Washington on the root canal waiting list.[4]  Oliveira Decl. ¶ 6.

On April 4, 2011, Washington wrote a letter stating his infection returned.[5]  Compl. at 4.  On the same day, Washington's Ibuprofen prescription expired.  Dkt. No. 56 at 26.  On April 6, 2011, Washington's Amoxicillin/Clavulanate prescription expired.  Id.  By letter dated April 9, 2011, Washington advised Oliveira that he required dental assistance because he could not eat or sleep due to swollen and bleeding gums, which also caused him great pains.  Dkt. Nos. 1 at 19, 56 at 16.

On April 12, 2011, Washington informed Stickle that he was in terrible pain despite taking over 3000 milligrams of Ibuprofen.  Compl. at 4.  Washington did not sleep for two days and had swollen and bleeding gums.  Id. at 5.  Washington had tooth pain and used emergency dental sick-call.  Oliveira Decl. ¶ 7; Washington Resp. at 4–5.  Washington saw Oliveira, who "punctured a hole to front gumms [sic] beneath tooth, swabbed blood with

---

[4] An acute abscess is "one which runs a relatively short course, producing some fever and a painful local inflammation."  Id. at 5.

[5] Washington does not indicate to whom the letter was addressed or submit the letter to the Court.

4

gorze [sic]." Compl. at 5. Oliveira changed Washington's antibiotic and placed Washington on pain medication. Oliveira Decl. ¶ 7; see Washington Resp. at 4–5. Specifically, Oliveira prescribed Washington Ibuprofen that expired on April 16, 2011, and Levofloxacin that expired on April 18, 2011. Compl. at 5; Dkt. No. 56 at 26. Oliveira stated Washington would be placed on dental call-out in two weeks, albeit that did not transpire. Compl. at 5.

On April 19, 2011, Washington informed his program shop officer that he required to go on emergency dental call-out. Compl. at 5. Oliveira treated Washington "by placing rods in the front tooth cavity, closed cavity[, and] stated [that Washington] would be place[d] on dental call-out." Id. Again, Washington never received the appointment. Id. Washington continually sought medical attention through call-out procedures from February 10, 2011 until June 14, 2011.[6] Id. According to Oliveira, Washington's April 19, 2011 visit was a regular root canal dental visit. Oliveira Decl. ¶ 8.

On May 15, 2011, Washington submitted a grievance concerning the difficulties he encountered with attempting to receive medical care for his tooth abscess. Compl. at 6; Dkt. Nos. 1 at 18, 56 at 17. In his grievance, Washington contends that he had not seen Oliveira since April 12, 2011. Dkt. Nos. 1 at 18, 56 at 17. Washington complained that this process was ongoing for three months, during which he suffered unbearable headaches and high blood pressure. Dkt. Nos. 1 at 18, 56 at 17.

Washington contends that pursuant to DOCCS Directive #4040, the Inmate Grievance

---

[6] Washington contends that he received dental call-out on May 31, 2011 and June 14, 2011 because of a complaint he sent to LaValley. Compl. at 5.; Dkt. No. 56 at 13–14.

Resolution Committee ("IGRC")[7] was obligated but failed to confirm receipt of his grievance within two working days of its mailing. Compl. at 6. Washington further contends that, as the Directive mandates, the IGRC failed to issue a disposition within sixteen days from when he filed his grievance.[8]  Id.

On May 31, 2011, non-party Baker, a program officer, advised Washington of a dental call-out. Compl. at 6. According to Oliveira, the call-out was for completing Washington's root canal procedure and a final radiograph showed proper completion of endodontic[9] treatment. Oliveira Decl. ¶ 9. Washington argued the root canal should have been completed on May 15, 2011. Washington Resp. at 6. When Washington returned from dental call-out, Baker informed Washington that his IGRC call-out was rescheduled. Compl. at 6. Washington never received a rescheduled IGRC call-out. Id.

On June 9, 2011, Washington wrote a letter to Oliveira for a dental appointment. Compl. at 6; Dkt. Nos. 1 at 17, 56 at 18. On June 11, 2011, Washington wrote non-party Superintendent LaValley a letter seeking assistance in completing the root canal procedure. Compl. at 6; Dkt. Nos. 1 at 14, 56 at 20. On the same day, Washington complained to the IGRC by letter that he never had a rescheduled call-out to see the IGRC and he required

---

[7] The DOCCS "IGP [Inmate Grievance Program] is a three-step process that requires an inmate to: (1) file a grievance with the IGRC [Inmate Grievance Resolution Committee]; (2) appeal to the superintendent within four working days of receiving the IGRC's written response; and (3) appeal to the CORC [Central Office Review Committee] . . . within four working days of receipt of the superintendent's written response." Abney v. McGinnis, 380 F.3d 663, 668 (2d Cir. 2004) (internal citations omitted).

[8] Neither Washington nor defendants provided the Court a copy of Directive #4040.

[9] Endodontic refers to "a branch of dentistry concerned with the etiology, prevention, diagnosis, and treatment of diseases and injuries affecting the dental pulp, tooth root, and periapical tissue." DORLAND'S at 553.

6

further dental care. Dkt. Nos. 1 at 15–16, 56 at 19. On June 14, 2011, Washington's root canal was completed with a tooth filling. Compl. at 6; Oliveira Decl. ¶ 10; Dkt. No. 56 at 24.

On June 15, 2011, Washington received an IGRC decision, with which Washington disagreed. Compl. at 6; Dkt. No. 56 at 22. On June 16, 2011, Washington appealed the IGRC decision to LaValley. Dkt. No. 56 at 22. The IGRC decision stated, "[Washington] . . . is advised that he is on the list for completion of root canal (root canals are performed on front teeth only). [Washington] . . . will be placed on a call-out in the near future." Id.

On June 30, 2011, Washington was transferred to South Port Correctional Facility. Oliveira Decl. ¶ 11; Washington Resp. at 7. At this point, Oliveira and Farooki no longer treated Washington. Oliveira Decl. ¶ 11; Washington Resp. at 7. Washington contends that he had gone a total of forty-four days without medication. Washington Resp. at 13.

On July 11, 2011, Washington appealed LaValley's July 2, 2011 decision, which stated,

> Inmate Washington was transferred to Southport Correctional Facility on 6-27-11 during his ongoing treatment. Dr. O advised that his root canal treatment was completed and he was on the list for restoration when he was transferred. Dr. F advised that it is difficult to make any other observations or comments without consulting the patients chart.

Dkt. No. 56 at 23. Washington takes issue with the signature on the decision, alleging that it belongs to a sergeant, not Superintendent LaValley. Compl. at 6; Dkt. No. 1 at 9.[10] By disposition dated September 21, 2011, CORC upheld the Superintendent's determination.

---

[10] By letter dated August 8, 2011, Washington informed Bellamy of his belief that he received a fake superintendent appeal because it was signed by a sergeant, not Superintendent LaValley. Dkt. No. 1 at 9. By a separate letter authored on the same day, Washington informed Bellamy of his concern as to how Clinton's delay in sending him mail may affect the timeliness of his grievance appeals. Id. at 8. On September 21, 2011, CORC issued a decision on Washington's grievance appeal. Dkt. No. 56 at 24.

Dkt. No. 56 at 24. CORC stated that Washington's grievance was filed on May 19, 2011, not May 15, 2011, and it was processed in accordance with Directive #4040. Id.

## II. Discussion

Washington contends that defendants Farooki and Oliveira violated his Eighth Amendment rights by (1) exhibiting deliberate indifference to his serious dental needs and (2) committing dental malpractice. Defendants contend that they provided Washington with competent, professional, and timely dental care.

### A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). It must be apparent that no rational finder of fact

8

could find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223–24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally,". . . and that such submissions must be read to raise the strongest arguments that they "suggest," . . . . At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . . or arguments that the submissions themselves do not "suggest," . . . that we should not "excuse frivolous or vexatious filings by pro se litigants," . . . and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law . . . ."

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191–92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds pro se, . . . a court is obliged to construe his pleadings liberally.'" (citations omitted)). However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion; the requirement is that there be no genuine issue of material fact. Anderson, 477 U.S. at 247–48.

### B. Medical Indifference

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual

9

punishment." U.S. CONST. amend. VIII. This prohibition extends to the provision of medical care. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). The test for a § 1983 claim is twofold. First, the prisoner must show that the condition to which he was exposed was sufficiently serious. Farmer v. Brennan, 511 U.S. 825, 834 (1994). Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm. Id. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Id. at 844.

"'Because society does not expect that prisoners will have unqualified access to healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim. Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003) (quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992)). Since there is no distinct litmus test, a serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." Brock v. Wright, 315 F.3d 158, 162–63 (2d Cir. 2003) (citing Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998)). The severity of the denial of care should also be judged within the context of the surrounding facts and circumstances of the case. Smith, 316 F.3d at 185.

Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs." Chance, 143 F.3d at 702. Thus, prison officials must be "intentionally denying or delaying access to medical care or

10

intentionally interfering with the treatment once prescribed." Estelle v. Gamble, 429 U.S. 97, 104 (1976). "Mere disagreement over proper treatment does not create a constitutional claim" as long as the treatment was adequate. Chance, 143 F.3d at 703. Thus, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists . . . are not adequate grounds for a section 1983 claim." Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001).

Washington claims that the majority of his requests and scheduled dental call-outs were either ignored or cancelled. Record evidence overwhelmingly establishes that Washington received dental treatment from both Farooki and Oliveira. Even though the "treatment of a [plaintiff's] medical condition 'generally defeats a claim of deliberate indifference,'" Perez v. Hawk, 302 F. Supp. 2d 9, 21 (E.D.N.Y. 2004) (citation omitted), "the Court interprets [Washington's] . . . claim as one for delay in the provision of medical treatment." Brunskill v. Cnty. of Suffolk, No. 11-CV-586 (SJF) (ETB), 2012 WL 2921180, at *3 (E.D.N.Y. July 11, 2012).[11]

### 1. Delay in Dental Treatment

Defendants summarily asserted that Washington failed to allege or prove both the objective and subject elements of his medical indifference claims. However, defendants failed to show an absence of a genuine issue of fact with respect to both elements.

"When the basis of a prisoner's Eighth Amendment claim is a temporary delay or

---

[11] All unpublished opinions cited to by the Court in this Report-Recommendation are, unless otherwise noted, attached to this Recommendation.

11

interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged <u>delay</u> or <u>interruption</u> in treatment rather than the prisoner's <u>underlying medical condition</u> alone in analyzing whether the alleged deprivation is, in 'objective terms, sufficiently serious,' to support an Eighth Amendment claim." <u>Brunskill</u>, 2012 WL 2921180, at *3 (citing <u>Smith v. Carpenter</u>, 316 F.3d 178, 185 (2d Cir. 2003)); <u>see also</u>, <u>Salahuddin v. Goord</u>, 467 F.3d 263, 280 (2d Cir. 2006) ("[I]f the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry focuses on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone." (internal quotation marks, alteration, and citation omitted)). Courts have found delay to constitute deliberate indifference when "officials deliberately delayed care as a form of punishment, ignored a life threatening and fast-degenerating condition for three days, or delayed major surgery for over two years." <u>Brunskill</u>, 2012 WL 2921180, at *3 (citation omitted).

In this case, Washington has proffered sufficient evidence showing a genuine issue of fact with respect to the objective element. Washington's abscessed tooth required multiple dental appointments and call-outs with defendants and resulted in an X-ray, prescription pain medications and antibiotics, and placement on the root canal waiting list. Further, Washington contends that he endured excruciating pain during the time leading up to the root canal procedure. Furthermore, Washington maintains that the tooth pain caused him to have headaches and prevented him from eating or sleeping. Moreover, it has been held that an "aggravation of a dental problem due to a three-week delay in treatment constitutes sufficiently serious medical conditions." <u>Ramos v. O'Connell</u>, 28 F. Supp. 2d 796, 802 (W.D.N.Y. 1998) (citations omitted). While Farooki prescribed Washington medication that

expired on February 19, 2011, despite Washington's numerous attempts to go on dental call-out, more than three weeks had passed before Washington received medical attention from Oliveira on March 28, 2011. Thus, this delay in treatment may result in an aggravation constituting a sufficiently serious medical condition.

Defendants failed to submit any evidence to support their contention that Washington's dental condition was not sufficiently serious as to warrant an Eighth Amendment claim. Crediting Washington's repeated complaints of pain, in conjunction with the dental records supplied by defendants, such submissions support a finding of the existence of a medical need worthy of treatment, a medical condition that significantly affected Washington's daily activities, and Washington having suffered extreme or chronic and substantial pain. Brock, 315 F.3d at 162–63. Further, the delay in treating Washington may have aggravated Washington's dental condition, especially since an infection prevented Oliveira from performing a root canal procedure on March 28, 2011.[12] Ramos, 28 F. Supp. 2d at 802. Therefore, Washington has sufficiently raised a material issue of fact as to the objective prong of his claims.

As for the subjective element of his medical indifference against Farooki, Washington has raised an issue of fact that requires resolution by a jury. Throughout the remainder of February 2011, Washington made at least two more dental call-out requests to Farooki. Record evidence shows that despite Washington's pleas, Farooki never examined Washington again after the February 10 diagnosis. Farooki has advanced nothing to refute Washington's claims. The dental requests, in conjunction with Farooki's silence, create a

---

[12] The governing law dictates that the evidence must be viewed in the light most favorable to the non-moving party.

13

factual issue as to whether Farooki intentionally delayed Washington access to continuing medical care. Estelle, 429 U.S. at 104; Chance, 143 F.3d at 702. Thus, Washington has sufficiently raised a material issue of fact as to the second element of his claim against Farooki.

Turning to the subjective element of Washington's medical indifference claim against Oliveira, Washington has also raised an issue of fact. If accepting Washington's contentions as true, Oliveira either ignored Washington's requests for dental-calls or failed to follow-up on Washington with scheduled dental appointments on numerous occasions between March and June 2011. Despite that Oliveira in fact treated Washington during this time period, Oliveira does not put forth any evidence refuting Washington's allegations concerning the unanswered medical requests and canceled appointments. There remains issues of fact as to whether Oliveira intentionally delayed examining and prescribing Washington medication, which left Washington in serious pain. This includes Washington's assertion that his May 31, 2011 root canal completion should have taken place on May 15, 2011, where it remains unclear whether Washington was medicated during the two-week period. As such, a reasonable finder of fact could find in favor of Washington. Gallo, 22 F.3d at 1223–24.

Accordingly, defendants' motion on this ground should be denied.

### 2. Dental Malpractice

Washington's allegations that defendants violated his Eighth Amendment rights by committing medical malpractice withstands defendants' motion for summary judgment. In

the prison context, "medical judgments amount[ing] to negligence or malpractice . . . [do] not become a constitutional violation simply because the plaintiff is an inmate." Wright v. Genovese, 694 F. Supp. 2d 137, 155 (N.D.N.Y. 2010), aff'd, 415 F. App'x 313 (2d Cir. 2011) (citing inter alia Sonds, 151 F. Supp. 2d at 312); see also Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). However, "medical malpractice may rise to the level of deliberate indifference . . . when [it] involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces a conscious disregard of a substantial risk of serious harm." Chance, 143 F.3d at 703 (internal quotation marks and citation omitted). Here, as discussed supra, Washington presents an issue of material fact as to whether defendants consciously disregarded a substantial risk of serious harm by delaying Washington's requests for dental treatment. Defendants do not address whether or not they received Washington's requests or were aware of Washington's experience with continuing tooth pain. Because defendants do not present evidence refuting Washington's allegations, and Washington presented evidence showing that defendants were aware of Washington's dental needs, there remains factual issues that must be resolved by a jury. Celotex Corp., 477 U.S. at 323.

Accordingly, defendants' motion on this ground should be denied.

### C. Inadequate Processing of Grievances

Liberally construing the complaint, Washington alleged a potential First Amendment claim against the IGRC members and LaValley for failing to file and process his grievance

and appeals in accordance with the IGP and Directive #4040 at Clinton.  Defendants do not address this potential claim.

The First Amendment provides that prisoners have a constitutional right of access to the courts.  Lewis v. Casey, 518 U.S. 343, 346 (1996).  This right is implicated when prison officials "actively [interfer[e] with inmates' attempts to prepare legal documents . . . or file them . . . ."  Id. at 350 (citing cases).  "However, inmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim."  Shell v. Brzezniak, 365 F. Supp. 2d 362, 370 (W.D.N.Y. 2005) (citation omitted).  Here, Washington challenges the alleged delay in receiving the IGRC response and the Superintendent's disposition and the authenticity of the Superintendent's disposition.  Nevertheless, even assuming such violations occurred, those violations per se do not amount to a cognizable claim in this action.  Therefore, any allegations concerning the inadequacy in the processing of his grievance cannot establish a viable claim.

Accordingly, Washington's potential First Amendment claim should be dismissed.

### III.  Conclusion

For the reasons stated above, it is hereby

1. **RECOMMENDED** that defendant's motion for summary judgment (Dkt. No. 51) be **DENIED**; AND

2. Further **RECOMMENDED** that Washington's First Amendment claims be dismissed from this action.

16

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: May 15, 2013
Albany, New York

*/s/ Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge